## LIVINGSTON *et al. v.* PEACOCK *et al.*

1. Where land was sold at an executor's sale, and prior to the execution and delivery of a deed by the executor to the purchaser an agreement was entered into that the executor would take over the purchaser's bid, or take from the purchaser a conveyance of the land, the sale was voidable at the instance of distributees of the estate, though there was no agreement as to the repurchase by the executor prior to the sale, and even though the executor paid the purchaser a profit on the latter's bid.

2. The court properly refused a request to charge the jury that if they believed from the evidence there was no necessity for the executor to sell the land in question to pay the debts of the testator, they might consider such evidence upon the question of the good or bad faith of the executor, though they could not consider it for the purpose of impeaching the ordinary's order of sale. The plaintiffs could not thus disclaim a purpose of impeaching the order of sale, and yet thus indirectly attack it by showing that the executor acted in bad faith.

No. 3096. MARCH 3, 1923.

Equitable petition. Before Judge Dickerson. Dodge superior court. January 6, 1922.

In 1900 the plaintiffs brought suit alleging as follows: The plaintiffs were all the children and heirs at law of Alfred Mullis, deceased, late of Dodge County, and all of them were of the age of twenty-one years. In 1892, at the March term of the superior court of Dodge County, a suit in every respect similar to the present one, with substantially the same cause of action, was brought and was continued until, upon motion of plaintiffs, the same was dismissed; and within six months after the dismissal of the former suit the present suit was brought. On or about September 25, 1875, Alfred Mullis, then a citizen of Dodge County, died intestate. Mrs. P. T. C. Mullis and Lovett Brown were nominated executors in a nuncupative will which was duly established. In this will the testator left lot of land No. 216, in the 6th district of Dodge County, to his wife, Mrs. P. T. C. Mullis, so long as she remained a widow. The will provided that she should use this property during her widowhood, and after her marriage or death all of his property, including that lot of land, should be equally divided among his children. On or about October 19, 1877, Mrs. P. T. C. Mullis married George Boutwell, by which act on her part said lot of land became the property of the petitioners' children and heirs at law of the testator. On May 7, 1878, Lovett Brown, as executor, sold the lot of land at the court-house door under some semblance of public outcry, pretending to have a right to do so under an order of the court of ordinary of the county; and at this sale Lovett Brown was indirectly the purchaser of the lot of land at his own sale, he having fraudulently and illegally procured H. J. Sapp to bid off the lot for him. The executor made a deed to Sapp for the lot, and on the same day received from Sapp a deed to himself for the lot on the same consideration as named in the deed to Sapp. The lot of land was not fairly sold. On the day of the sale the executor was asked, after the sale hour had arrived, when he would sell the land; and he gave as his answer that he did not know when he would sell, if at all, and if he sold at all, it would be only for the purpose of perfecting title. A purchaser was there for the purpose of bidding on the land, and was prevented by the fraudulent conduct of the executor. As soon as the persons who went there to make the land bring a fair price had gone away from the court-house, he exposed the property to sale, and bought it

himself through his agent, H. J. Sapp, at the grossly inadequate price of $25, when the land was well worth $2,000 or other large sum.

Plaintiffs further alleged, that previously to the day of the sale the executor, intending to prevent a fair sale of the land and to get it for himself at less than its value, made an agreement with John S. Livingston, who had intended to bid a good price on the land, by which Livingston was not to bid on the land at all, but in consideration thereof he received from the executor a free gift of twenty acres of the lot on the side next to Livingston's premises; that in pursuance of this fraudulent agreement Livingston did not bid for the land on the day of the sale, but afterwards, on September 9, 1879, with full knowledge of the participation in the fraudulent conduct of Brown, the executor, in securing the deed to the lot of land, accepted a gift of twenty acres of said lot; that on June 2, 1880, Nancy Peacock, a daughter of Lovett Brown, with full knowledge of the fraudulent and illegal manner in which her father had secured his deed to the land, accepted a gift from him of one hundred acres of the land; that she is now in possession of said land, fraudulently holding the same, and refusing to account for the rents, issues, and profits thereof; that on July 9, 1880, H. A. Peacock, a son-in-law of Brown, with full notice that Brown had secured a deed to said lot in the fraudulent and deceitful manner hereinbefore set forth, accepted from Brown a deed to thirty-two and one half acres of the lot; that on January 4, 1892, H. A. Peacock accepted a deed for forty acres of the land, with full knowledge of the fraudulent acquisition of said lot by his grantor; that all the defendants have entered into possession of the land under the deeds above mentioned, and are collecting the rents, issues, and profits, have disposed of the timber and turpentine privileges on the land, and have refused to account for the same. The plaintiffs prayed a decree cancelling the deeds from Brown to the above-named defendants; that the title to the land be declared vested in the plaintiffs; and that they might recover the value of the timber, rents, etc.

The case was referred to an auditor, who in due course made his report. To his findings adverse to the defendants they filed exceptions of fact. The issues made by the exceptions of fact

were submitted to a jury, who found in favor of the exceptions and against the findings of the auditor. The plaintiffs made a motion for a new trial, which was overruled, and they excepted.

*B. R. Calhoun* and *Hall, Grice & Bloch,* for plaintiffs.

*W. A. Wooten, D. D. Smith, W. M. Morrison,* and *J. H. Roberts,* for defendants.

PER CURIAM. 1. The plaintiffs insist that the sale of the land in question by Lovett Brown, the executor, was not a sale made bona fide by the executor as such; that under the facts it was voidable, because the executor was himself indirectly the purchaser of the lot of land at his own sale; that he fraudulently and illegally procured H. J. Sapp to bid the land off for him, the executor making a deed to Sapp for the land, and on the same day receiving a deed from Sapp, conveying the land to himself for the same consideration as named in the deed to Sapp. There was evidence tending to support this contention; and the plaintiffs duly requested the court in writing, to give the following in his charge to the jury: " If you believe from the evidence that prior to the execution and delivery of the deed from Brown as executor to H. J. Sapp there was an agreement between Brown and Sapp that Brown was to take over Sapp's bid or take from Sapp a conveyance of the land, then the sale is voidable at the petition of the plaintiffs; and this would be true even though there was not any agreement prior to the sale, and even though Brown paid Sapp a profit on his bid." The court should have given the charge as requested. In the case of *Ridgeway* v. *Ridgeway,* 84 *Ga.* 25 (10 S. E. 495), where a question very similar to that presented here was under consideration, it was said: " There were two administrators, and they had joined in procuring an order for a sale. One of them caused the land to be sold in the presence of the other. It was bid off by a third person (Ware) for about half its value. He was immediately offered by the selling administrator fifty dollars for his bid, and at once agreed to take it. When this bargain was made, Ware had not acquired title to this land; it still belonged to the estate. He had neither paid for it nor taken a conveyance. The transaction, therefore, was not essentially different from a purchase by an administrator at his own sale. The administrator did purchase before the sale was consummated. He raised Ware's bid fifty dollars, giving

Ware the benefit of the advance instead of giving it to the es-tate. It would have been better for the estate if he had bought directly from himself rather than through Ware. What followed between them, except as to the fifty dollars, was an empty formality colored with ink, for the purpose of investing the administrator with the appearance of a paper title. He conveyed to Ware, who gave him a check upon a bank for the amount of the bid; then Ware conveyed back to him, took up the check, destroyed it, and received fifty dollars, which was the only money passed between the parties. . . The outward and visible circumstances of the transaction went strongly to establish the whole case of fraud set up by the complaint. The code . . says that fraud being in its nature subtle, slight circumstances may be sufficient to establish it. Here the circumstances were more than slight. . . It is possible that the combination prior to the sale, between the administrator and auctioneer, and between the administrator and bidder, which is alleged in the complaint may not have existed. Whether it existed or not, the deeds ought to be set aside. In *Alexander* v. *Alexander,* 46 *Ga.* 290, Judge McCay says, ' The purchase by the trustee is prima facie a fraud; and however the formal legal title may be, he holds the property as trustee under the implied understanding which the law casts upon him.' . . If there was no fraudulent combination prior to the sale, the result, legal and equitable, flowing from the other facts of the case, would be the same."

2. The ruling made in the second headnote requires no elaboration. The error in refusing the written request considered in the first division of this opinion requires the grant of a new trial, and the error was of such character as to affect the entire case and to require another hearing on the issues involved.

*Judgment reversed. All the Justices concur.*